# COE *v.* ARMOUR FERTILIZER WORKS.

## ERROR TO THE SUPREME COURT OF THE STATE OF FLORIDA.

No. 140.  Submitted January 20, 1915.—Decided May 3, 1915.

Where the case was tried twice below and twice went to the highest court of the State and the Federal question was decided adversely to plaintiff in error on the first appeal, he is not concluded thereby because he failed to then take a writ of error if it appears that the first judgment of the higher court did not finally dispose of the case but required further proceedings in the court below.

Not until the judgment of the court of last resort is final will a writ of error lie to this court under § 237 Judicial Code.

The contention that under the local practice on a second writ of error to the Supreme Court of the State a Federal question that was passed on at the first hearing is not open, cannot be sustained in this court if as a matter of fact the state court did pass on the question on the second hearing and decide it adversely to plaintiff in error.

Any course of procedure having for its object the taking of property to satisfy an alleged legal obligation without according any hearing to a respectful protest invoking the supreme law of the land cannot be regarded as due process of law.

Section 2677, General Statutes of Florida of 1906 as amended in 1909, as construed by the highest court of the State, is repugnant to the due process provision of the Fourteenth Amendment in so far as it allows, after execution has been returned "no property" against a corporation, an execution to issue against a stockholder for the same debt to be enforced against his property to the extent of his unpaid subscription as the same appears on the books of the corporation without notice to such stockholder or other preliminary step.

While a judgment against a corporation without fraud or collusion in a court having jurisdiction may be made conclusive upon the stockholder, as to existence and amount of the debt, the property of a third party may not be taken to satisfy that debt upon the ground that he is a stockholder and indebted to the corporation without granting him an opportunity to be heard.

One protesting against his property being taken without due process of law cannot be denied such process on the ground that due process would lead to the same result as he had no defense on the merits.

Extra-official or casual notice, or a hearing granted as matter of favor or discretion, does not take the place of the notice with right and opportunity to be heard which the due process provision of the Federal Constitution requires.

In this case the execution was not a mere attachment establishing a lien without going further until after opportunity to be heard.

Where defendant comes into court for the sole purpose of objecting on jurisdictional grounds to the execution of final process against his property his petition cannot, under the due process provision of the Fourteenth Amendment, be converted into a tender of an issue of fact respecting his status as a stockholder so as to conclude him on a matter not within the pleadings and which was not litigated.

63 Florida, 64, reversed.

THE facts, which involve the constitutionality of § 2677, General Statutes of Florida of 1906, as amended by the act of 1909, c. 5892, relating to the liability of stockholders for judgment debts of the corporation to the extent of their subscriptions remaining unpaid, are stated in the opinion.

*Mr. W. A. Carter* for plaintiff in error:

The statute is unconstitutional, as violating the Fourteenth Amendment. *In re Rosser*, 101 Fed. Rep. 562, 567; *Louisville Trust Co.* v. *Cominger*, 184 U. S. 18; *Rouse* v. *Donovan*, 62 N. W. Rep. 359; *Lauder* v. *Tillia*, 11 Atl. Rep. 86; *Lauder* v. *Logan*, 16 Atl. Rep. 44; *Wilson* v. *Seligman*, 36 Fed. Rep. 154; *Pennoyer* v. *Neff*, 95 U. S. 714.

Notice to stockholder is necessary to charge him for corporate debts. Thompson on Corps., §§ 3596, 3598, 3591, 3602.

*Hampson* v. *Weare*, 4 Iowa, 12; *Donworth* v. *Coolbaugh*, 5 Iowa, 300; *Bank of Columbia* v. *Okely*, 4 Wheat. 326; *Bernheimer* v. *Converse*, 206 U. S. 5–16; *Straw Co.* v. *Kilbourne Boot Co.*, 80 Minnesota, 125, relied upon by defendant in error can be distinguished.

*Mr. O. K. Reaves* for defendant in error:

The first decision of the Supreme Court of Florida has become the law of this case and cannot be changed by this writ of error from the second decision of said Supreme Court. *Valdosta Mercantile Co.* v. *White*, 56 Florida, 704; *Anderson* v. *Northrop*, 44 Florida, 472; *McKinnon* v. *Johnson*, 57 Florida, 120; *Knight* v. *State*, 44 Florida, 94; *Clark* v. *Keith*, 106 U. S. 464; *Supervisors* v. *Kennicott*, 94 U. S. 499; *Browder* v. *McArthur*, 7 Wheat. 55; *Ogden* v. *Saunders*, 12 Wheat. 332; *Bell* v. *Niles*, 61 Florida, 114; *Hoopes* v. *Crane*, 56 Florida, 395; *Dunellon Phosphate Co.* v. *Crystal River Co.* (Fla.), 58 So. Rep. 787.

The statute does not contravene the Fourteenth Amendment. 10 Cyc., p. 670, note 47; *Eames* v. *Savage*, 77 Maine, 212; *Stanley* v. *Stanley*, 26 Maine, 191; *Vial* v. *Penniman*, 103 U. S. 714; *Bernheimer* v. *Converse*, 206 U. S. 516; *Hampson* v. *Weare*, 4 Iowa, 13; *Armour Fertilizer Works* v. *Parrish Vegetable Co.*, 63 Florida, 64; *Bank* v. *Okely*, 4 Wheat. 233; Cooley's Const. Lim., 7th ed., 506; *Dutton Phosphate Co.* v. *Priest* (Fla.), 65 So. Rep. 282;

*Castillo* v. *McConnico,* 168 U. S. 674; *Blanchard* v. *Burrus,* 20 Florida, 467; *Louis. & Nash. R. R.* v. *Schmidt,* 177 U. S. 230; *State ex rel. Canfield,* 40 Florida, 36; *Barnett* v. *Hickson* (Fla.), 41 So. Rep. 606; *Ex parte Scudamore,* 55 Florida, 211.

*Wilson* v. *Seligman,* 36 Fed. Rep. 154; *Pennoyer* v. *Neff,* 95 U. S. 714; *Rouse* v. *Donovan,* 62 N. W. Rep. 359; *Lauder* v. *Tillia,* 11 Atl. Rep. 86, relied upon by plaintiff in error distinguished.

MR. JUSTICE PITNEY delivered the opinion of the court.

The Armour Fertilizer Works, having recovered in the Circuit Court for Manatee County, Florida, a judgment for about $3,000 against the Parrish Vegetable & Fruit Company, a corporation, sued out a writ of execution against the goods and lands of that company and placed it in the hands of the sheriff, who returned that he was unable to find any property of the judgment debtor whereon to levy. Thereupon, pursuant to § 2677, Gen. Stat. Fla. 1906, as amended by act of 1909, c. 5892, the Fertilizer Works sued out an execution against the goods and lands of the plaintiff in error, Henry L. Coe, as a stockholder of the Vegetable Company. This writ set forth the recovery of the judgment by the Fertilizer Works against the Company, mentioning the date, the amount, and the court in which it was recovered, the issuing of execution against that company and the return thereon, and commanded that there be made of the property of Coe, as one of the stockholders of the Company, "an amount equal to the amount remaining unpaid upon the subscription of the said Henry L. Coe to the stock of said corporation." A formal levy was made upon a parcel of land, the property of Coe, but there was no interference with his possession, nor had any step been taken towards selling the land, when Coe filed in the Circuit Court a petition to quash the execution as issued

illegally, alleging that it had been issued without notice to him and amounted to the taking of his property without due process of law, and that the statute permitting it was void under the constitution of Florida, and was also repugnant to the "due process" and "equal protection" clauses of the Fourteenth Amendment. The Circuit Court entered judgment in the following words: "The execution is quashed, but not on the ground of unconstitutionality of the statute. The statute is constitutional, but the execution cannot issue till some preliminary steps are taken." The Fertilizer Works removed the cause by writ of error to the Supreme Court of Florida, and that court reversed the judgment (63 Florida, 64), holding that the statute required no preliminary step to be taken before an execution might be issued against a stockholder, and that there was no general law or rule requiring previous notice to him. The court further said:

"A stockholder of a corporation becomes such charged with knowledge that under the statute upon the return of *nulla bona* upon an execution issued against the corporation an execution may be issued against him for the unpaid subscription to the stock he holds. . . . . The statute above quoted [sec. 2678, Gen. Stat. 1906, set forth below] affords the means by which the officer holding the execution may obtain definite information as to the stockholders and the unpaid subscriptions on the stock. If the person against whom the execution is issued is not in fact a holder of stock upon which there is unpaid subscription, or if the amount of the execution is in excess of the unpaid subscription, the stockholder may have appropriate relief under the statute providing for the testing of the legality of executions. See Sections 1624 and 1625, Gen. Stats. of 1906."

The case went back to the Circuit Court with a mandate "that such further proceedings be had in said cause as according to right, justice, the judgment of said Supreme

Court, and the laws of the State of Florida, ought to be had." It was again brought on for hearing before the Circuit Court, when, without further pleadings or evidence on either side, judgment was rendered denying the motion to quash. Upon Coe's writ of error, the Supreme Court affirmed this judgment, for reasons expressed as follows:

"Coe does not claim that he was [not] in fact a stockholder, nor that there remains no balance due upon his stock, nor seek to interpose any of the defenses pointed out as open to him upon the former hearing, but stands boldly on his attack upon the constitutionality of the act, and by a proceeding unknown to our practice. There does not appear to have been any forcible seizure of any property of the said Coe, other than the formal levy upon realty, which does not interfere with the owner's possession. The statute presents many difficulties, that may arise as to others not similarly situated, and may as such be beyond the power of the legislature; but the party now before this court has not brought himself within the class who may justly complain, and the judgment as to him, upon the authority of our former holding, is, therefore, affirmed."

The present writ of error was then sued out.

Defendant in error moves to dismiss, upon the ground that, according to the local practice, the opinion delivered by the Supreme Court upon the first writ of error decided the question involved and became the law of the case, so that plaintiff in error, having failed to take a writ of error upon that judgment, was thereafter concluded by it. But, as appears from what has been stated, the first decision did not conclude the litigation; it called for further proceedings in the Circuit Court, and not until the judgment rendered by that court on the going down of the mandate had been affirmed upon the second writ of error did there exist a final judgment in the court of last resort of the state, such as might be brought under

the review of this court by virtue of § 237, Jud. Code, act of March 3, 1911, § 237, c. 231, 36 Stat. 1087, 1156. Besides, the contention that, by the local practice, the Federal question was not open for discussion or consideration upon the second writ of error is conclusively dis- posed of by the fact that the Supreme Court did, on that occasion, again consider it, with the result that the state law and the authority exercised under it were up- held as valid and not repugnant to the Constitution of the United States, and the immunity especially set up and claimed by plaintiff in error under that Constitution was overruled. *Nor. Car. R. R.* v. *Zachary,* 232 U. S. 248, 257, and cases cited. The statement in the second opinion, that the attack of plaintiff in error upon the constitution- ality of the act was "by a proceeding unknown to our practice," does not, we take it, mean that the court did not necessarily pass upon the constitutional question. We are not sure we clearly comprehend the meaning of the expression quoted, in view of the effect attributed to §§ 1624 and 1625 in this case and in earlier decisions cited below. It would seem plain that any course of procedure having for its object the taking of property to satisfy an alleged legal obligation, and which yet ac- corded no hearing to a respectful protest invoking on reasonable grounds a prohibition found in the supreme law of the land, could itself hardly be termed "due process of law." The constitutional guaranty is not to be thus evaded, and we cannot believe there was any purpose to evade it in this case. Upon the whole, the right of review in this court is clear, and the motion to dismiss the writ of error must be denied.

The Florida statutes upon which the controversy turns are set forth in the margin.[1] That we may not

---

[1] GEN. STAT. FLORIDA 1906

Sec. 2677. (2152.) May Issue Against Stockholders.—If any execution shall issue against the property or effects of any corporation,

misapprehend the construction placed upon them by
the state court of last resort, or the ground of its opinion
that they afforded due process of law to plaintiff in error,

and there cannot be found whereon to levy, then such execution may
be issued against any of the stockholders to an extent equal in amount
for so much as may remain unpaid upon the subscription and no further;
and all property whether real or personal of any stockholder in any
corporation aforesaid shall be exempt from the debts and liabilities
of such corporation contracted in its corporate capacity, except the
stock of said stockholder of or in said corporation to the extent men-
tioned aforesaid.

[Amended by Florida Laws 1909, Ch. 5892, to read as follows:

2677. (2152.) MAY ISSUE AGAINST STOCKHOLDERS.—If any execu-
tion shall issue against the property or effects of any corporation,
and there cannot be found whereon to levy, then such execution may
be issued against any of the stockholders to an extent equal in amount
for so much as may remain unpaid upon their subscription to capital
stock and no further.]

2678. (2153.) CUSTODIAN OF RECORDS TO GIVE SHERIFF NECESSARY
INFORMATION.—The clerk or other officer having charge of the books,
records and papers of any corporation, on demand of any officer hold-
ing execution against the same, shall furnish such officer with the
name, places of residence and the amount of liability of every person
liable as aforesaid, and if such officer refuses so to do he shall, upon
complaint thereof, be liable to a fine not exceeding five hundred dollars.

1624. (1195.) UPON AFFIDAVIT OF ILLEGALITY AND BOND.—If any
execution shall issue illegally, the defendant in execution, his agent or
attorney, may procure a stay of the same by making and delivering
to the officer having the execution an affidavit stating the illegality
and whether any part of the execution be due, and a bond payable
to the plaintiff with two good and sufficient sureties in double the
amount of the execution or the part of which a stay is sought. Upon
receipt of such affidavit and bond the officer shall stay any proceeding
on the execution and return the bond and affidavit to the court from
which the execution issued; and such court shall pass upon the ques-
tion of illegality as soon as possible. If the execution be adjudged
illegal in any part the court shall make an order staying it as to such
part, but if it be adjudged legal in whole or in part, the court shall
(or if it has a clerk, shall direct such clerk to) enter up judgment against
the principal and sureties on such bond for the amount of so much

it will be well to briefly review their history. Sections 2677 and 2678 trace their origin to §§ 22 and 23 of an act of 1868 (Laws, p. 123, ch. 1639), which followed the model of § 36 of the Companies Clauses Consolidation Act 1845 (8 & 9 Vict. Cap. 16), except that they permitted execution against the stockholder to an extent "equal in amount to the amount of stock by him owned, together with any amount unpaid thereon." There was a proviso, as in the English act, that no such execution should issue except upon an order of the court, "made upon motion in open court after good and sufficient notice in writing to the person upon whom execution is desired." These sections were repealed in 1874 (Laws, p. 95, ch. 2016), and reenacted in 1879, with insignificant verbal modifications (Laws, p. 118, ch. 3165, §§ 9 and 10). By an act of 1887 (Laws, p. 96, ch. 3729), the liability of stockholders to the creditors of the corporation was limited to "so much as may remain unpaid upon his or her subscription." In the Revision of 1892 this limitation of the liability was engrafted upon the act of 1868 as reenacted in 1879, and at the same time the provision for notice to the stockholder prior to the issuing of the execution was omitted. The result appeared as §§ 2152 and 2153 of that Revision, found as §§ 2677 and 2678 in the General Statutes of 1906. The amendment of 1909 was apparently passed for the purpose of bringing the phraseology of the section into conformity with the judicial construction, as declared in *Knight & Wall Co.* v. *Tampa S. L. B. Co.*, 55 Florida, 728, 743, 744.

Meanwhile, and from an early period, the laws of Florida

---

of the execution as shall be adjudged to be legal, and execution shall forthwith issue thereon.

1625. (1196.) Upon Motion.—The court before which an execution is returnable may, on a motion and notice to the adverse party, for good cause, upon such terms as the court may impose, direct a stay of the same, and the suspension of proceedings thereon.

have contained provisions for testing the legality of any writ of execution upon application of the defendant made after its issue. Sections 1624 and 1625, Florida Gen. Stats. 1906, referred to in the opinion of the Supreme Court above quoted, originated in acts of 1834 (Laws, p. 13, ch. 742), and of 1844 (Laws, p. 54, § 6), concerning which the court has repeatedly held that they provide separate, consistent, and independent remedies; the one by proceeding before the sheriff, the other before the court or a judge in vacation; and that the courts of law have full power to revoke, correct, restrain, or quash their own process in the course of their ordinary jurisdiction, so that no recourse to a court of equity is necessary. *Mitchell* v. *Duncan*, 7 Florida, 13, 19; *Robinson* v. *Yon*, 8 Florida, 350, 354; *Mathews* v. *Hillyer*, 17 Florida, 498, 500; *Barnett* v. *Hickson*, 52 Florida, 457, 460.

We understand, therefore, that in the present case the court held that under § 2677, as amended in 1909, on a return of "no property" upon an execution against a corporation, an execution may be issued against any stockholder without notice to him or other preliminary step; that the writ is to be enforced against his property to the extent of his unpaid subscription to the stock that he holds in the company, and this amount the officer ascertains from the custodian of the records of the corporation, in accordance with § 2678; that if the person against whom the execution is issued is not in fact a holder of stock upon which there is an unpaid subscription, or if the amount of the execution exceeds the unpaid subscription, he may have relief under §§ 1624 or 1625; and that, in the absence of such objection on his part, the execution is enforced, although there may have been only a formal levy, without even such notice to the owner of the property as might be implied from a forcible seizure or an interference with his possession.

Thus construed, and as applied in this case, we think

§ 2677 is repugnant to the "due process of law" provision of the Fourteenth Amendment, which requires at least a hearing, or an opportunity to be heard, in order to warrant the taking of one's property to satisfy his alleged debt or obligation; and in our opinion the other sections do not adequately supply the defect.

It may be conceded that a judgment recovered against a corporation, without fraud or collusion, in a court having jurisdiction over the subject-matter and the party, may consistently with the Fourteenth Amendment be treated as concluding the stockholder respecting the existence and amount of the indebtedness so adjudged. *Sanger* v. *Upton, Assignee,* 91 U. S. 56, 59; *Hawkins* v. *Glenn,* 131 U. S. 319, 329; *Glenn* v. *Liggett,* 135 U. S. 533, 544; *Great Western Telegraph Co.* v. *Purdy,* 162 U. S. 329, 337. But before a third party's property may be taken to pay that indebtedness upon the ground that he is a stockholder and indebted to the corporation for an unpaid subscription, he is entitled, upon the most fundamental principles, to a day in court and a hearing upon such questions as whether the judgment is void or voidable for want of jurisdiction or fraud, whether he is a stockholder and indebted, and other defenses personal to himself. See *Great Western Telegraph Co.* v. *Purdy, ubi supra; Bernheimer* v. *Converse,* 206 U. S. 516, 528, 532; *Converse* v. *Hamilton,* 224 U. S. 243, 256; *Selig* v. *Hamilton,* 234 U. S. 652, 660.

The suggestion that because, under §§ 1624 and 1625, a hearing upon pertinent questions of fact may be had at the instance of the alleged stockholder after the execution issues and before interference with his possession or his property right, therefore plaintiff in error, having been at liberty in this proceeding to raise meritorious questions, is not "within the class who may justly complain," will not withstand critical analysis.

The statute mentions no classes, and the state court

merely distinguished between those who complain and those who do not. Against one and all, execution may be issued without notice or hearing; the judgment against the corporation, and the record of stockholdings and stock subscriptions found upon the books of the corporation, being treated as conclusive against those named as stockholders. If a person against whom execution is thus issued as for an unpaid stock subscription does not happen to receive notice, extra-officially, or receiving it makes no objection, his property is taken in satisfaction of the corporation's debt—manifestly without due process of law. But, it is said, plaintiff in error is not within that class; he in fact learned of the execution before his property was sold or even his possession was disturbed, and he had an opportunity for a hearing in the present proceeding as to all questions upon which his liability depended. The fallacy of this is that it ignores the issue of law raised by the petition of plaintiff in error, and substitutes an issue of fact for which he was not summoned and which he has not consented to litigate. To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits. *Rees* v. *Watertown*, 19 Wall. 107, 123.

Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that the Constitution requires. In *Stuart* v. *Palmer*, 74 N. Y. 183, 188, which involved the validity of a statute providing for assessing the expense of a local improvement upon the lands benefited, but without notice to the owner, the court said: "It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an op-

portunity to be heard." The soundness of this doctrine has repeatedly been recognized by this court. Thus, in *Security Trust Co.* v. *Lexington*, 203 U. S. 323, 333, the court, by Mr. Justice Peckham, said, with respect to an assessment for back taxes: "If the statute did not provide for a notice in any form, it is not material that as a matter of grace or favor notice may have been given of the proposed assessment. It is not what notice, uncalled for by the statute, the taxpayer may have received in a particular case that is material, but the question is, whether any notice is provided for by the statute" (citing the New York case). So, in *Central of Georgia Ry.* v. *Wright*, 207 U. S. 127, 138, the court said: "This notice must be provided as an essential part of the statutory provision and not awarded as a mere matter of favor or grace." In *Roller* v. *Holly*, 176 U. S. 398, 409, the court declared: "The right of a citizen to due process of law must rest upon a basis more substantial than favor or discretion." And in *Louis. & Nash. R. R.* v. *Stock Yards Co.*, 212 U. S. 132, 144, it was said: "The law itself must save the parties' rights, and not leave them to the discretion of the courts as such."

The writ of execution cannot of itself be treated as equivalent to a writ of attachment, establishing a lien upon the stockholder's property, but going no further until he has had an opportunity to show cause why that property should not be applied to the payment of the corporation's debt. Not only is such a purpose wholly unexpressed in the writ, but such is not its normal function or effect, no "day in court" is named, and there is no provision for notice or monition by service, publication, mailing, or otherwise. *Windsor* v. *McVeigh*, 93 U. S. 274, 279, et seq.; *Grannis* v. *Ordean*, 234 U. S. 385, 393.

This case bears no proper analogy to *York* v. *Texas*, 137 U. S. 15, 21; *Kauffman* v. *Wootters*, 138 U. S. 285; and *Western Indemnity Co.* v. *Rupp*, 235 U. S. 261, 272;

where it was held that a State, without violence to the due process clause of the Fourteenth Amendment, may so regulate its practice that a person who voluntarily enters one of its courts to contest any question in a pending action—even a person appearing specially to object that the court has not acquired jurisdiction over him— may be deemed to have submitted himself to the jurisdiction of the court for all purposes of the action, and hence be bound by its determination of the merits if his objection to the jurisdiction be overruled. For in this case there was no pending action or issue; plaintiff in error came into court to object, on jurisdictional grounds, to the execution of final process upon his property. And the effect of the decision under review was to convert his petition, which simply raised an issue of law under the state constitution and the Fourteenth Amendment into a tender of an issue of fact respecting his status as a stockholder and the amount of his unpaid subscription, if any, and then to hold him concluded upon the latter issue for failure to introduce evidence bearing upon it. In doing this, the court in effect rendered judgment against him upon a matter that was not within the pleadings and was not in fact litigated. To do this, without his consent—and the record shows no consent—is contrary to fundamental principles of justice. *Reynolds* v. *Stockton*, 140 U. S. 254, 268, 269.

*Judgment reversed, and the cause remanded for further proceedings not inconsistent with this opinion.*