ISAAC MICHAEL GREEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THOMAS HENRY SMITH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 31293, 31294. Promulgated July 26, 1932.

*Lloyd W. Dinkelspiel, Esq.,* and *Jerome B. White, Esq.,* for the petitioners.

*J. A. Lyons, Esq.,* and *E. L. Updike, Esq.,* for the respondent.

720

OPINION.

MARQUETTE: The respondent asserts that the petitioners are liable as transferees for income taxes assessed against Green's Advertising Agency for the years 1919, 1920 and 1921. The contention is founded

upon the theory that the corporation was insolvent during each of those years and remained insolvent until it was dissolved in April, 1926, and that while so insolvent it distributed to the petitioners large amounts of money as dividends. The amount of dividends to each petitioner in each of the taxable years was greater than the amount of income tax against the corporation for those years, respectively. When the corporation was dissolved the net value of its assets distributed to the petitioners amounted to $8,200.

Section 280 (a) (1) of the Revenue Act of 1926 provides that there shall be assessed, collected and paid in the same manner as in the case of a deficiency in tax:

(1) The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax * * * imposed upon the taxpayer by this title or by any prior income, excess-profits, or war-profits tax Act.

The respondent invokes the trust-fund theory respecting corporate assets. But not every transferee of assets of a corporation is liable to the company's creditors under the trust-fund doctrine. This Board held in *Samuel Keller*, 21 B. T. A. 84, that:

This trust can only be impressed upon assets of the corporation which are distributed upon dissolution, or during the insolvency of the corporation, or when such distribution creates a condition of insolvency.

See also *United States* v. *Armstrong*, 26 Fed. (2d) 227; *Ratcliff* v. *Clendenin*, 232 Fed. 61; *Hollins* v. *Brierfield Coal & Coke Co.*, 150 U. S. 371.

In the case of *McDonald* v. *Williams*, 174 U. S. 397, the court said:

We think the theory of a trust fund has no application to a case of this kind. When a corporation is solvent, the theory that its capital is a trust fund upon which there is any lien for the payment of its debts has in fact very little foundation. No general creditor has any lien upon the fund under such circumstances, and the right of the corporation to deal with its property is absolute so long as it does not violate its charter or the law applicable to such corporation.

*       *       *       *       *       *       *

The bank being solvent, although it paid its dividends out of capital, did not pay them out of a trust fund. Upon the subsequent insolvency of the bank and the appointment of a receiver, an action could not be brought by the latter to recover the dividend thus paid on the theory that they were paid from a trust fund, and therefore were liable to be recovered back.

It is contended on the part of the complainant, however, that if the assets of the bank are impressed with a trust in favor of its creditors when it is insolvent, they must be impressed with the same trust when it is solvent; that the mere fact that the value of the assets of the corporation has sunk below the amount of its debts, although as yet unknown to anybody, cannot possibly make a new contract between the corporation and its creditors. In the case of insolvency, however, the recovery of the money paid in the ordinary way without condition is allowed, not on the ground of contract to repay, but because the money thus paid was in equity the money of the creditor; that it did not belong to the bank, and the bank in paying could bestow no title in

the money it paid to one who did not receive it bona fide and for value. The assets of the bank while it is solvent may clearly not be impressed with a trust in favor of creditors, and yet the trust may be created by the very fact of the insolvency and the trust enforced by a receiver as the representative of all the creditors.

The taxes in question, although asserted subsequent to the taxable years, constituted a potential liability of the corporation of which the stockholder must take notice. *Updike* v. *United States*, 8 Fed. (2d) 913; *United States* v. *Armstrong, supra.* The basic question, then, is whether Green's Advertising Agency was insolvent when it distributed dividends to these petitioners in 1919, 1920 and 1921, or was made insolvent by such distribution. If so, they are clearly liable under section 280 of the Revenue Act of 1926.

The books of account of the advertising agency formed the basis of the respondent's evidence to sustain his contention that the company was insolvent during 1920 and thereafter. The book which was relied upon discloses that from January, 1919, until the end of 1925, the company earned net profits for each year, distributed them to stockholders, and kept its capital of $25,000 unimpaired. It also discloses that while the distribution of dividends at the close of the year 1919 did not then render the company insolvent, the further distribution of dividends in subsequent years left the company with an aggregate of capital and surplus insufficient to pay the then accumulated total of income tax. The company thus became insolvent in 1920 by reason of the dividend distributions and remained insolvent thereafter until the corporation was dissolved in 1926.

The dividends were paid to the present petitioners in equal portions. The aggregate amount received by each petitioner during the years 1919, 1920 and 1921 was more than the total of the income taxes asserted against the company for those years. In our opinion each petitioner is liable, as transferee, for payment of the company's unpaid income taxes here asserted unless that liability is barred by some valid defense. The petitioners allege as defenses that: (1) The true tax liability of Green's Advertising Agency for the years here involved has not yet been finally determined; (2) under the Revenue Act of 1926 any claim for taxes for the years in question is barred by the statute of limitations; (3) Green's Advertising Agency was a personal service corporation and not subject to the taxes here involved; and (4) the liability now asserted is barred by reason of compromise.

The record discloses that after receiving deficiency notices, Green's Advertising Agency filed appeals with this Board, and the only question presented was that of the personal service status of the advertising agency. Decision was rendered in September, 1927, and was appealed to the Circuit Court of Appeals, where it was affirmed February 11, 1929. Meanwhile, in May, 1928, the taxes here in-

volved were assessed against the advertising agency, no stay bond having been filed. No petition was filed in the Supreme Court for a writ of certiorari, and, therefore, the decision of the Board became final, under section 1005 (a) (2) of the Revenue Act of 1926, on May 11, 1929. One year longer was permitted under the statutes for making assessments against these petitioners, or until May 11, 1930, but prior to that date the petitions herein were filed and thereby again suspended the running of the statute of limitations in favor of the petitioners.

Even though the running of the statute might have been invoked by the corporation, it waived its right in that particular and the defense is not now available to these petitioners. The assessment has been made, the Board's decision has become final, and the matter is thus concluded, not only with respect to the status of the corporation as a taxable entity and the amount of taxes due from it, but also with respect to the running of the statute of limitations, which might have been offered as a defense. Cf. *Cromwell* v. *County of Sac*, 94 U. S. 351; *Harshman* v. *Knox County*, 122 U. S. 306. In the *Cromwell* case the court said:

\* \* \* the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defenses actually existed, of which no proof was offered, such as forgery, want of consideration, or payment. If such defenses were not presented in the action, and established by competent evidence, the subsequent allegation of their existence is of no legal consequence. The judgment is as conclusive, so far as future proceedings at law are concerned, as though the defenses never existed. The language, therefore, which is so often used, that a judgment estops not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented, is strictly accurate, when applied to the demand or claim in controversy. Such demand or claim, having passed into judgment, cannot again be brought into litigation between the parties in proceedings at law upon any ground whatever. \* \* \*

And in the *Harshman* case, the court used the following language:

\* \* \* And, \* \* \* "the estoppel is not confined to the judgment, but extends to all facts involved in it, as necessary steps or ground-work upon which it must have been founded." It is none the less conclusive beca'ise rendered by default. \* \* \* Certainly nothing that contradicts the record of the judgment can be alleged in a proceeding at law for its collection by execution. \* \* \*

While the Board's decision was rendered in an appeal by the corporation, in our opinion the present petitioners were in privity with that corporation and are bound by the decision. They owned all of the capital stock of the company, except 1 per cent, presumably

qualifying shares, standing in the name of Isaac Green's wife; they were the managing officers of the company, attended to all its affairs, and formulated and directed its policies. Cf. *Jahncke Service, Inc.,* 20 B. T. A. 837; *J. E. Duval,* 21 B. T. A. 1357; *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413; *Selig* v. *Hamilton,* 234 U. S. 652. We consider the above decisions controlling on the question of privity and, the defenses not being personal to petitioners, we conclude that they are estopped from now asserting the first three of their defenses, enumerated above, affecting the liability of the corporation. We are also of opinion that the period for assertion of liability against the petitioners as transferees had not yet expired at the time the notices of liability were mailed to petitioners, to wit, on April 18, 1927.

The petitioners also contend that the liability now asserted is barred by reason of a compromise. The evidence discloses only that the petitioners sent checks, accompanied by an offer of compromise, to the collector of internal revenue at San Francisco, who gave receipts for them and collected the amounts of the checks through the usual banking procedure. The offer of compromise was neither accepted nor rejected by the respondent when the proceedings were heard. In our opinion the facts disclosed are not such as constitute an estoppel against the respondent in respect to the present proceedings.

With respect to the refunds claimed by the petitioners, this Board has no jurisdiction to consider the claims filed. These refund claims were apparently filed in connection with their personal liability for income taxes and we do not have those proceedings before us. See section 284 (e) of the Revenue Act of 1926, and section 322 (d) of the Revenue Act of 1928.

*Decision will be entered for the respondent.*