RICHARDSON et al. v. UNITED STATES.

(Circuit Court, E. D. Virginia.    March 14, 1900.)

1. NAVIGABLE WATERS—RIVER BEDS—GRANT OF RIGHTS TO RIPARIAN OWNERS.
    By a statute of Virginia (Acts 1883–84, c. 254, and amendments thereto)
    the inspector of oysters of a county was authorized to assign to each
    riparian proprietor submerged land in front of his land suitable for plant-
    ing oysters not to exceed one-half an acre in extent.    Assuming to act
    under such law, an inspector assigned to one of plaintiffs, who were ripa-
    rian proprietors on the York river, a navigable stream, a location con-
    taining 30 acres below low-water mark, and to the other plaintiff 10
    acres.    In staking off such assignments each of the plaintiffs included
    territory 216 acres in extent, and they proceeded to plant portions of the
    same with oysters, in partnership.    Held, that such proceedings did not
    vest plaintiffs with such title to the locations claimed by them as to entitle
    them to recover compensation from the United States for injury thereto
    and to the oysters planted therein resulting from the lawful action of
    the government in dredging the channel of the river, on the ground that
    such injury constituted a taking of private property for public use.

2. SAME.
    Riparian owners on a navigable stream, the bed of which is owned by
    the state for public purposes, cannot claim rights in such bed, as licen-
    sees of the state, on the ground that they are in possession under color
    of title, when such possession was taken contrary to the express provi-
    sions of the statutes of the state, and against its declared policy.

3. SAME—INJURY INCIDENT TO IMPROVEMENT OF NAVIGATION—CLAIMS AGAINST
    UNITED STATES.
    A state holds the title to the beds of navigable streams within its bound-
    aries in trust for the public for the purposes of commerce and naviga-
    tion, the sole control over which is vested by the constitution in congress;
    and, while the state may grant the use of such river beds to private
    citizens, such grants are subject to the obligation to suffer the conse-
    quences incident to the improvement of navigation on such river under
    an act of congress, and damages resulting from the prosecution of such
    improvement cannot be recovered from the United States.

L. L. Lewis, for plaintiffs.
Wm. H. White and Edgar Allan, for the United States.

SIMONTON, Circuit Judge.    This is an action brought under the
provisions of chapter 359, Acts 1887 (24 Stat. 505), giving to this
court co-ordinate jurisdiction with the court of claims in a specified
class of suits against the United States when the amount claimed
does not exceed $10,000 and is more than $1,000.    The petition al-
leges that certain lands of the petitioners were taken by the United
States for public purposes, and it seeks compensation therefor.

Findings of Fact.

(1) The petitioners, A. P. Richardson and G. W. Richardson, were
riparian proprietors, each in severalty, of tracts of land contiguous
to each other on York river, in the state of Virginia, a navigable
stream.

(2) On March 4, 1884, the general assembly of Virginia passed an
act for the preservation of oysters, and to obtain revenue for the
privilege of taking them within the waters of the commonwealth.
Chapter 254, Acts 1883–84.    The sixth section of this act is at-

tached to an appendix hereto. It authorizes the inspector of oysters of the county to assign to each riparian proprietor submerged land in front of his land suitable for planting oysters, not to exceed, however, one-fourth of his water front.

(3) On August 27, 1884, at an extra session, the general assembly amended this section, limiting the amount of land to be set apart and assigned to each riparian proprietor in this proviso: "Provided that the said assignment shall not exceed one-half of an acre." Acts 1884, p. 37. On November 29, 1884, the act was still further amended by adding these words: "And all other privileges accorded to riparian proprietors under the provisions of the section hereby amended are hereby revoked. And the inspectors shall return to the riparian owners all taxes, rents and fees collected under the provisions of said section."

(4) In the year 1885, A. P. Richardson obtained from the inspector of oysters an assignment of a location on his water front, containing 30 acres of land below low-water mark, in York river. The application was made and was granted pursuant to the statute of Virginia approved March 4, 1884. In the same year G. W. Richardson obtained from the same inspector, pursuant to the provisions of the same act, an assignment of a location of similar lands on his water front of 10 acres. These assignments were in writing. They were lost, destroyed, or mislaid. Their contents were proved by parol. After obtaining these assignments, the two Richardsons entered into a co-partnership in the oyster business, using these lands, or parts of them, for planting oysters. Each put into the co-partnership his assignment without formal transfer thereof.

(5) The inspector laid off these assignments in a very perfunctory manner, so that, when A. P. Richardson staked off his assignment, his territory covered 216 acres, and, when G. W. Richardson staked off his, his territory also covered 216 acres.

(6) These submerged lands formed an excellent bed for planting oysters. They were used by the Richardsons for that purpose, and were so in use in 1891, 1892, and 1893. Upon what part of the territory the oysters were planted does not distinctly appear.

(7) In the year 1891, congress having previously thereto made an appropriation for the purpose, the officers of the United States proceeded to improve the navigation of York river, and to this end dredged out the channel of the river, dumping the same on mud flats above the lands which the Richardsons had staked out, and on a part of which they had planted a number of oysters, and on which also they had laid shell piles, used in propagating oysters.

(8) This dredging in the river stirred up the mud which filled the stream, and, moved by the tide, a quantity of the mud was deposited within the stakes set out by the petitioners, with the result of killing the oysters and destroying the shell piles.

(9) In addition to the dredging, the engineers of the United States constructed a wooden dike, a portion of which was on the edge of the territory staked out, its length being a mile and upward. The purpose of this was to divert water into the main channel of the river, and its effect on the territory staked in by peti-

tioners was to take water from it, and greatly diminish, if not destroy, its use for oyster planting. This dike did not actually invade the part of the territory in which oysters were planted.

, (10) The effect of all of this was to destroy the business of petitioners for three years, and to kill a large quantity of oysters. How many were killed cannot be accurately determined from the testimony.

### Conclusions of Law.

1. The operations directed by the government and conducted by its officers were in the lawful exercise of the powers conferred on congress by article 1, § 8, of the constitution. South Carolina v. Georgia, 93 U. S. 4, 23 L. Ed. 782.

2. Petitioners claim that in so conducting its lawful operations the government used their private property for public purposes. If this be so, an implied contract arises that for such use the government will afford just compensation. U. S. v. Great Falls Mfg. Co., 112 U. S. 645, 5 Sup. Ct. 306, 28 L. Ed. 846.

3. To succeed in this claim, they must assume the burden of proving, and must prove, that the location claimed by them to have been taken is their private property. They must show title. This proof is not of such a character as would be sufficient to maintain an action of trespass. The proceeding is not against the United States as a tort feasor,—a proceeding this court could not entertain.

4. To this end petitioners prove the contents of a written document executed by the inspector of oysters, who assumes to act under the authority of the state of Virginia, conferred by an act of assembly of March, 1884. It must appear, therefore, that the state of Virginia is the absolute owner in fee simple of the bed of this navigable stream, the York river; that she had clothed her agent, the inspector of oysters, with full power and authority to grant a license of the portion of this bed claimed by the petitioners; that in the exercise of this authority he had pursued it according to the terms in which it was granted to him; that the petitioners, on their part, had fulfilled all the conditions to be performed by them.

5. The court will take judicial cognizance of the title of the state of Virginia in the bed of this navigable stream. A discussion of it is unnecessary, in the view taken of this case. The inspector of oysters, in 1885, professing to act under the authority of the act of 1884, assigned to one of the petitioners 30 acres of the river bed, and to the other 10 acres. Assuming, for the sake of argument, that when he assumed to act under the act of March, 1884, he intended to act as well under each amendment thereof, we find that by the amendment of August, 1884, the inspector of oysters was expressly limited in authority to granting but one-half acre of the river bed to a riparian proprietor. His action, therefore, had no authority in law, and was null and void.

6. The petitioners, to fortify their title, set up a claim for possession under color of title. They had set their stakes so as to embrace a territory for each of them of 216 acres of river bed, and

now claim a license for that territory. It will be observed that this is a claim for a license,—an incorporeal hereditament. Can a title to such an interest be acquired by possession under color of title? It will also be observed that the title to these lands is admitted to be in the state of Virginia. Can possession under color of title ripen into title, unless it be first shown that title has passed out of the state by grants? This position is inconsistent with the claim set up in the petition. That is based wholly on the license of the oyster inspector under the act of 1884, claiming, the one, 30 acres; the other, 10 acres. Under the act they are required to stake out the land assigned to them by the oyster inspector, and they professed to have done so. As a result each claims 216 acres. This would be a fraud the law could not countenance. Again, the declared policy of the state of Virginia—a policy emphasized by the same act under which the petitioners claim to have acted, and to whose authority they now appeal—is that in the use of submerged lands for oyster purposes by riparian proprietors no one of them can use more than half an acre of the lands on his water front. Can the petitioners, in the face of this statute, so in evidence, come into this court, and put the United States in their place, and ask just compensation for lands held, used, and occupied by them unlawfully?

7. With regard to the oysters and oyster plant which were injured by the results of the dredging operation: The injury was caused, not by any invasion of the territory on which the oysters were planted, or where the oyster plant was situated. The dredging of the river above this locality stirred the mud, and, as an incidental result thereof, the injury was effected. When private property is taken for public use, the government must make compensation, and it is not necessary to the taking that the property be actually converted to the public use. It is enough if its value be destroyed, or permanently injured. Pumpelly v. Canal Co., 13 Wall. 166, 2 L. Ed. 557. But in such case the injury must be direct, and not consequential. Zimmerman v. Canal Co., 1 Watts & S. 346. Especially is this the law with regard to property on navigable streams. It is true that the beds of navigable streams are the property of the state. And it is also true that the state can grant the use of such beds to private citizens. Knight v. Association, 142 U. S. 183, 12 Sup. Ct. 258, 35 L. Ed. 974; Gould, Waters, § 34, and cases quoted. But the state holds these beds in trust for the public for the purposes of commerce and navigation, and subject to these purposes; and the constitution has given congress sole control over navigation and commerce. So the persons who hold under the state are affected with the same trusts. Therefore riparian ownership on navigable waters is subject to the obligation to suffer the consequences of the improvement of the navigation under an act of congress passed in the exercise of the dominant right of the government in that regard, and damages resulting from the prosecution of such an improvement cannot be recovered in the court of claims. Gibson v. U. S., 166 U. S. 269, 17 Sup. Ct. 578, 21 L. Ed. 996. Acts done in the proper exercise of govern-

mental powers, and not directly encroaching upon private property, although their consequences may impair its use, are not a taking within the meaning of the constitutional provision which forbids the taking of such property for public use without just compensation therefor. Transportation Co. v. City of Chicago, 99 U. S. 635, 25 L. Ed. 336.

8. The verdict will be for the defendant, and judgment will be entered accordingly.