# Wytheville.

## T. J. BLAKE AND OTHERS v. DOW MARSHALL AND OTHERS.

June 20, 1929.

Absent, West, J.

618

The opinion states the case.

*Catesby G. Jones, J. Boyd Sears* and *J. Winston Read,* for the appellants.

*C. S. Smith, Jr.,* and *C. M. Hall,* for the appellees.

PRENTIS, C. J., delivered the opinion of the court.

The appellants, who hold certain oyster grounds in York river under assignments or leases from the Commonwealth, upon which they had planted oysters, filed their bill against the appellees, who are oyster tongers duly licensed under Code 1919, section 3242, as amended Acts Extra Session 1927, chapter 223, to take or catch oysters or clams during the prescribed season from the natural oyster rocks, beds, or shoals, of the Commonwealth.

The bill, after describing the grounds covered by their leases, alleges:

"(2) That your said complainants have been for years legally occupying the said ground under lease

from the State of Virginia; and that during the fall of 1928, upon a resurvey of natural oyster bottom known as public ground No. 27, No. 28 and No. 29, it was determined by the Commission of Fisheries of the State of Virginia that a portion of each of the said tracts of oyster ground were upon a part of the said natural rock as defined by the aforesaid public grounds.

"(3) That your complainants believed that they were innocent holders of the said ground, that their leases therefor had been regularly made by the proper officials of the State of Virginia, that they believed until the said survey that they were not upon the natural rock as defined by law and that therefore upon it being determined by the said survey of the Commission of Fisheries that their said ground occupied in part the public rock as aforesaid, they applied to the Commission of Fisheries under authority of section 3233 of the Code of Virginia 1919, as amended by Acts 1926, chapter 97, for a period of two years within which to remove their oysters which they had before the said survey planted upon that part of their said oyster ground embraced in the public ground as aforesaid, which oysters exceed fifty thousand bushels in amount.

"(4) That upon a full and complete hearing of all of the evidence and argument of counsel the Commission of Fisheries did upon the 2nd day of February, 1929, deliver its opinion and order concerning the said applications made as aforesaid, by which order and decision the said Commission of Fisheries did, by virtue of the said section 3233 of the Code of Virginia, grant and allow each of your complainants a period of two years within which to remove the said oysters planted upon that part of the said natural rock or public ground included in their survey, all of which is

described hereinabove. A certified copy of the said order and decision of the said Commission of Fisheries is marked 'Exhibit B' and filed along with this bill of complaint and prayed to be read as a part thereof.

"(5) That upon the 4th day of February, 1929, certain persons associated and organized under the name of the Seafood Association of Gloucester County, among whom were most of the said defendants, who contested the application of your complainants before the Commission of Fisheries as aforesaid, met at Achilles, in Gloucester county, Virginia, and did at the said meeting vote to entirely disregard the said order and decision of the Commission of Fisheries as aforesaid and to go upon the said ground in dispute at any and all times that they wished and to take from the said grounds the oysters planted thereon by your complainants; that upon the 5th day of February, 1929, the defendants" (naming them) "did each and every one of the same, go upon the planting ground of your complainant, J. T. Blake, and did remove therefrom oysters which your complainants believe to be in an amount not less than one thousand bushels, to the great damage of the said T. J. Blake; that upon the said 5th day of February, 1929, the said T. J. Blake did cause to be issued a criminal warrant against each and every one of the said defendants, charging them in the said warrant with unlawfully stealing, taking and carrying away his oysters planted upon his ground as aforesaid.

"(6) That the said warrants were put into the hands of the sheriff of Gloucester county, who proceeded to arrest and bring before a magistrate of the said county all of the said defendants who promptly moved a continuance of a hearing under the said warrants and did there and then and frequently thereafter state they

expected to proceed again upon the 6th day of February, 1929, and as often thereafter as they wished to go upon the ground of all of your complainants and remove from the said ground any and all oysters found on that part of the said planting ground which is embraced within the Baylor survey; that upon the 6th day of February, 1929, the said defendants did again proceed to go upon the said ground for the purpose of removing oysters, but your complainants are not advised whether or not more oysters were removed upon the 6th day of February, 1929; that your complainant is informed and verily believes that unless this court grants to your complainants relief in the premises that the said defendants and others will remove from your complainants' oyster ground as aforesaid all of the oysters thereon, to the irreparable injury of your complainants."

The bill concluded with the formal prayers, and specifically that the named "defendants, their agents, servants, employees and all other persons be enjoined and restrained from going upon any of complainants' said tracts of oyster planting ground and taking therefrom, or in any manner molesting, the oysters planted thereon."

It appears from the Exhibit B, filed as a part of the bill, that the Commission of Fisheries consulted both its own attorney and the Attorney General as to the legal questions presented or suggested, and after a hearing and careful review of all the available evidence expressed their conclusion thus:

"In this situation, the Commission is of opinion that the objection to the granting of this petition would have to be sustained by satisfactory proof that the planters, by their default, were holding the public grounds in controversy. Without undertaking to

review the testimony of the individual witnesses, the Commission is of opinion, and so concludes from the whole testimony, that the weight of the testimony sustains the position taken by the planters, and finds as a fact from the evidence that the petitioners hold the several pieces of ground shown on the Ruediger re-survey without default on their part, that the same was assigned to them by mistake of the Oyster Inspector and Surveyor, and in those cases where the assignment was not completed that the planters have done everything required by law to be done by an applicant.

"For these reasons, on the law and facts, the Commission holds that the case presented comes within the statute, and that each petitioner should have two years from this date to remove his planted oysters from the grounds on the Baylor Survey, and shown by Ruediger's resurvey. That this can be done without violence to the rights of anyone is fortunate. The record shows that the public bottoms adjacent to ground in controversy have not been productive for many years, that one licensed to tong oysters could not catch over one-half bushel of oysters per day."

The defendants filed no answer and have denied none of these allegations of fact, but filed a demurrer to the bill and are here relying thereon, contending that Code 1919, section 3233, as amended, Acts 1926, chapter 97, is in conflict with Constitution 1902, section 175, and hence is invalid. The learned trial judge, who decided the case in the circuit court, being of the opinion that there is a conflict between the statute and the Constitution which is irreconcilable, sustained the demurrer and dismissed the bill. The single question thus presented by the appeal is quite apparent.

Section 175 of the Constitution reads: "The natural oyster beds, rocks and shoals, in the waters of this State shall not be leased, rented or sold, but shall be held in trust for the benefit of the people of this State, subject to such regulations and restrictions as the General Assembly may prescribe, but the General Assembly may, from time to time, define and determine such natural beds, rocks or shoals by surveys or otherwise."

The statute, Code 1919, section 3233, as amended by Acts 1926, chapter 97, reads:

"*Resurveys of planting grounds.*—When, by any re-survey of oyster planting grounds or survey made to re-establish the lines of the State survey of natural oyster beds, rocks or shoals which shall hereafter be made under the direction of the Commission of Fisheries, it shall appear that any holder, without his own default, and by mistake of any officer of the State, has had assigned to him and included in the plat of his assignment any portion of the natural oyster beds, rocks or shoals as defined by law, and it shall further appear that such holder has oysters or shells planted on the said ground, then, before the stakes shall be removed from said ground or the same opened to the public, the said holder shall be allowed two years, which may be increased by the Commission of Fisheries in their discretion (and duly advertised), within which to remove his planted oysters or shells from the said ground, and any person other than the said holder, his agents or employees, going upon the said ground and taking oysters or shells therefrom before the expiration of the time allowed said holder, shall be deemed guilty of larceny thereof, and shall be punished as provided by this act for the larceny of oysters."

■ The Commonwealth had developed a well defined policy of encouragement and promotion of the planting of oysters long before the adoption of the Constitution of 1902. Pursuant to this policy for the production and increase of this valuable food supply, the statute under consideration, in its substance, was enacted in 1900. The convention which adopted section 175 must be presumed to have known of the existence of that statute, which was theretofore certainly valid, and to have realized its purpose. Indeed, it is apparent that section 175 accords with the same purpose, for it expressly perpetuates the then existing powers of the General Assembly to regulate and restrict the use, as well as to "define and determine such natural beds, rocks or shoals by surveys or otherwise, from time to time."

■ It is of course fundamental that the General Assembly has the authority to enact any statute which is not prohibited by the Constitution; that the presumption is in favor of the validity of the statute; and that the burden of showing that it contravenes the Constitution is upon those who aver that it does. Even where there seems to be a conflict, this should be reconciled, if it is possible to uphold the statute in whole or in part. *Reaves Warehouse* v. *Commonwealth*, 141 Va. 199, 126 S. E. 87; *Tobacco, etc., Association* v. *Warehouse Co.*, 144 Va. 469, 132 S. E. 482.

■■ The contemporaneous construction placed upon constitutional limitations is significant, even though not always decisive. We find that at the time of the adoption of section 175, the framers of the Constitution used no language indicative of any purpose either to nullify the existing valid statute, or to repudiate the existing valid contracts with the oyster planters, or to discontinue the practice of extending grace in the future

as in the past in similar cases of mistake or fault of the officials and agents of the Commonwealth. If not incredible, it is certainly improbably, that had such purpose existed it would not have been expressed, or at least indicated, by some appropriate language in the Constitution.

The General Assembly was oblivious of any such conflict, because in the general revision immediately following the adoption of the Constitution this statute was left unchanged. Those then interested failed to perceive any conflict, irreconcilable or otherwise. This mental blindness in the legislative department existed when Pollard's Code was approved, in 1904, and has continued until now. In 1910, the general statutes relating to oysters were re-enacted, this section included. Acts 1910, chapter 343. Under an act approved March 21, 1914, a committee to revise the Code was appointed. Acts 1914, chapter 193. It consisted of Martin P. Burks, Samuel A. Anderson and Francis B. Hutton, all experienced and learned in the law. In adopting the Code of 1919, as recommended by them, this statute, as Code, section 3233, was again re-enacted. The latest statute now under consideration is that section as amended, the change being to allow the lessee oyster planter a minimum of two years within which "to remove his planted oysters and shells from the ground," which had been illegally, without his fault, and by mistake of an officer of the State, assigned to him. The Virginia State Commission of Fisheries, the administrative branch of the State government charged with the execution of the statute, has also failed to perceive any inconsistency between it and the Constitution.

So far as we have any expression from the bar, or the courts, there has been nothing to indicate any doubt of

the constitutionality of the act until this controversy developed in 1929.

Two cases have arisen in which the statute has been reviewed. The first is *Commission of Fisheries* v. *Hampton Roads, O. P. & P. Association*, 109 Va. 583, 64 S. E. 1041. There the oyster planter contended that notwithstanding the mistake, the State was estopped, and that his lease or assignment conferred upon him an irrevocable right, and that he could not be disturbed until his lease expired. This contention was denied, but the validity of the statute allowing him a reasonable time in which to remove his planted oysters was assumed and was not questioned. The opinion also shows that the proceedings were had before the Board of Fisheries and its successor in office, when section 2139a of the Code of 1904 was being invoked by the tongers for the removal of stakes around certain oyster ground alleged to be natural rock, etc. The statute was attacked as being unconstitutional, because it "failed to provide any notice to be given to the planter or lessee of the property of any procedure under which his rights could be adjudicated, and fails to make provision for any adjudication of his rights after notice, and that the said act, if enforced, will have the effect of depriving the said association of its property without due process of law." The opinion of the court nowhere intimates that this statute violates section 175 of the Constitution. In that case, Judge Cardwell, in his opinion, recited the fact that the Hampton Roads Company, when before the Board of Fisheries, and afterwards the Commission of Fisheries, invoked this statute, and as an evidence that this court also examined it, says: "If that were not so—*i. e.*, if the lessee or renter, notwithstanding the acts of the inspector in making the lease were

*ultra vires,* be entitled, under section 2187a, *supra,* to hold the leased ground—why should the legislature, as a matter of grace, have authorized the officers of the State charged with the supervision and control of the oyster grounds and the oyster industry of the Commonwealth, in their discretion, to allow a reasonable time within which a renter could remove his planted oysters or shells from grounds found to have been erroneously leased to him, either by mistake or otherwise."

The other case is *Hurley* v. *Commission of Fisheries,* (D. C.) 264 Fed. 116 (affirmed 257 U. S. 223, 42 S. Ct. 83, 66 L. Ed. 206. In that case too the validity of this. statute is also assumed by the court. Woods, Circuit Judge, delivering the opinion; after reciting some of the facts, these clear and illuminating expressions and conclusions follow:

"The rule of the common law is well settled that one who in good faith plants oysters on submerged land which is not natural oyster land—on which oysters. do not grow naturally—has the ownership of them, and may remove them, although he has not leased the land from the State; but it is equally well settled that. one who plants oysters on natural oyster lands, and. thus mingles them with the oysters growing naturally, is conclusively held to have abandoned them to the public. *Grace* v. *Willets,* 50 N. J. Law, 414, 14 Atl. 559; *Payne, et al.* v. *Providence Gas Co.,* 31 R. I. 295, 44 Atl. 145, Ann. Cas. 1912B, 65, 73; *People* v. *Morrison,* 194 N. Y. 175, 86 N. E. 1120, 128 Am. St. Rep. 552; *State* v. *Taylor,* 27 N. J. Law, 117, 72 Am. Dec. 347.

"The complainant at the hearing admitted, as was. demonstrated by the resurvey of the Baylor lines, that he had planted the oysters on the State's natural oyster grounds; and it followed as a matter of law that.

they became the property of the State, open to the public, unless the complainant could bring himself within the terms of the statutes of 1899 and 1910 hereinafter referred to. * * * The complainant, having under the common law no legal interest in the land or the oysters, could not allege the statute under which the Commission of Fisheries ordered the natural oyster land opened to the public to be unconstitutional, on the ground that it did not provide that he should have notice and a hearing. Having by the common law no property in the oysters planted, complainant had nothing to be compensated for, or to be protected by due process of law, unless he can show a property right conferred by the statute law of Virginia.

"In this situation he invoked and relied upon the following statutes of 1899 and 1910, under which he applied to the Commission of Fisheries to be allowed to remove the oysters:

" 'When by any resurvey of oyster-planting grounds or survey made to re-establish the lines of the State survey of natural oyster beds, rocks or shoals which shall hereafter be made under the direction of the Commission of Fisheries, it shall appear that any holder, *without his own default*, and *by mistake of any officer of the State, has assigned to him and included in the plat of his assignment* any portion of the natural oyster beds, rocks or shoals as defined by law, and it shall further appear that such holder has oysters or shells planted on the said ground, then, before the stakes shall be removed from said ground or same opened to the public, the said holder shall be allowed a reasonable time, the length of which is to be determined by the Commission of Fisheries, in their discretion (and duly advertised), within which to remove his planted oysters or shells from the said ground.' * * *

"The clause we have italicized shows that the State has conferred on a holder the right to remove oysters which he has planted on natural oyster ground on these express conditions: (1) The natural oyster ground must have been assigned to him and included in the plat of his assignment; (2) it must have been so included without his fault; and (3) it must have been so included by the fault of an officer of the State. &ast; &ast; &ast;

"The conclusive proof that the natural oyster ground held by complainant was never assigned nor surveyed, as ground leased to complainant or his predecessors, and that his occupancy was not due to mistake of an officer, leaves the complaint outside of the confines of the statutes of 1899 and 1910 and without any right he can assert under them. The testimony is far from convincing that complainant has been himself without default, inasmuch as the assignment and plats were matters of public record; but it is not necessary to decide that point, since he has failed to meet the other two conditions of the statute.

"The case, then, comes to this: When the complainant planted oysters on the natural oyster land, they became the property of the State under the common law. To relieve from possible hardship, the State by the statute last quoted conferred the right of a holder to remove the oysters on conditions set out in the statute. The statute does not take away any property, or injure any property right; on the contrary, it confers rights on the conditions set out."

It appears, then, that the legislative, administrative and judicial departments have not doubted the constitutionality of the act, and that until now no litigant has challenged it.

The words of Keith, P., in *Brown* v. *Epps*, 91 Va. 730, 21 S. E. 119, 27 L. R. A. 676, are quite appropriate

in this connection: "* * * and during all that time there has been no doubt entertained nor question raised as to the constitutionality of the law—when all this has been done in the presence of an able and inquisitive bar—a strong presumption is raised that the attack has not been made upon the constitutionality of the law, because, in the judgment of the courts and of the profession, no such ground of objection existed."

Let us advert to the language of Constitution 1902, section 175, which is said to invalidate the statute. We observe—

(a) That the natural oyster rocks are subject to "regulation" by the General Assembly.

In *Gibbons* v. *Odgen*, 9 Wheat. 1, 196, 6 L. Ed. 23, Mr. Chief Justice Marshall, in referring to the power of Congress to regulate commerce, said: "We are now arrived at the inquiry, what is this power? It is the power to regulate; that is, to prescribe the rule by which commerce is to be governed. This power, like all others vested in Congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the Constitution."

This statute is a regulation, designed to maintain the policies of the State, on the one hand to discharge the trust as to the natural rocks so as to recover them promptly for the public benefit if leased by mistake of the State's own official, and on the other hand to encourage the planting and propagation of oysters by assuring the leasee that, if innocent, he may recover his planted oysters which, but for the statute which changes the common law, would be forfeited. This regulation is a recognition of the moral considerations which support the claim of the planter and to correct a mistake for which the State is responsible. Surely no

constitutional inhibition should be construed to deny to the people of the Commonwealth the power to correct the mistakes of its own agents, to discharge its moral obligations, and to preserve private property rights, unless such unethical construction is unavoidable. The oyster tonger has no property right in the natural oyster rocks, but only a privilege to take oysters from them, and this privilege is subject to regulation. The statute is one of many regulations authorized by the Constitution and made in the public interest.

 (b) The trust created by Constitution 1902, section 175, is also subject to such "restrictions as the General Assembly may prescribe."

This unqualified power as to restrictions emphasizes the extent and character of the regulations which may be prescribed by law, and qualifies the language immediately preceding, which imposes the trust. The public grounds may not be leased; they shall be held in trust for the benefit, not of a single class, but for all the people. Nevertheless, their use by any of the people may be at any time restricted. Having the power to restrict their use, who is to revise the discretion of the General Assembly in the reasonable exercise of that power? The statute does not discriminate, but merely restricts the use by the public of the public ground for a limited period for a specific purpose, that is, for the purpose of removing the property of the planter illegally but innocently placed there because of the mistake of the agents of the Commonwealth. This restriction is reasonable, is not contrary to the Constitution, but accords with its dominant purpose, i. e., the recovery and preservation of the public grounds for the public benefit.

 (c) There is still another power expressly reserved. The General Assembly may "from time to

time" (which means at any time) "define and determine such natural beds, rocks or shoals, by surveys or otherwise." This language is plain in its import. It recognizes the fact that the General Assembly had this power previously. It is clearly reserved, it is undiminished, and may be as freely exercised in the future as it has been in the past.

It is generally true that the greater power includes the less. It does in this instance. The power to withdraw the area here involved from the public use permanently includes the lesser power to withdraw it temporarily for a reasonable time for the specific purpose of permitting the complainants to remove their planted oysters and shells. When such a mutual mistake is discovered, two obligations arise which can only be discharged by the General Assembly. One, as trustee of all the people, to ignore the invalid lease, dispossess the planter of the public ground and prohibit the planting of any more oysters thereon; the other, the duty of saving the planter from any loss which can be avoided without injury to others. These duties are equally imperative. While the General Assembly cannot lease, rent or sell the natural oyster beds, rocks or shoals, they may regulate their use, restrict their use, and from time to time define and determine their location and limits. These powers are reserved by Constitution 1902, section 175.

The trial court should have overruled the demurrer. The decree sustaining it and dismissing the bill was erroneous and will be reversed here. The case will be remanded to the Circuit Court of Gloucester county for such further appropriate proceedings as may be necessary. If the defendants desire to answer the bill, they may be given leave to do so, and the cause will

proceed according to law. If they fail to answer, there should be a final decree, awarding and perpetuating the injunction in accordance with the prayer of the bill.

*Reversed and remanded.*