GLOUCESTER SEAFOOD WORKERS' ASS'N et al. v. HOUSTON, Commissioner of Fisheries of Virginia, et al.

District Court, E. D. Virginia. October 9, 1929.

Lester S. Parsons, of Norfolk, Va., for complainants.

Leon M. Bazile, Asst. Atty. Gen., for the State of Virginia.

Allan D. Jones, of Newport News, Va., for the Commissioner of Fisheries.

J. Boyd Sears, of Mathews, Va., and Catesby G. Jones, of Gloucester, Va., for the planters.

Before PARKER, Circuit Judge, and GRONER and MEEKINS, District Judges.

GRONER, District Judge. This is a suit begun by Gloucester Seafood Workers' Association, an unincorporated association composed of licensed oyster tongers of Virginia, and S. O. Hoggs and others, also licensed tongers, individually, against the commissioner of fisheries of the state of Virginia, the sheriffs of York and Gloucester counties, Va., and T. J. Blake and others, who have heretofore obtained from the state of Virginia leases on certain oyster grounds in York river. The Attorney General of the state of Virginia, on behalf of the state, has filed a motion to dismiss. The commissioner and the individual lessees have joined in this motion, and the latter have filed a joint and several answer to the bill of complaint, to be considered only in the event the motion to dismiss is denied. For convenience the parties will be hereafter spoken of as the tongers, the commonwealth, and the planters.

The bill of complaint charges that section 3233 of the Code of Virginia 1924 is in violation of paragraph 1 of the Fourteenth Amendment to the Constitution of the United States, in that it deprives the tongers of the privileges and immunities guaranteed to them under the Fourteenth Amendment; that it denies to them the equal protection of the laws; and that it deprives them of their property without due process of law.

The case for the tongers, briefly epitomized, is this:

That section 175 of the Constitution of Virginia declares: "The natural oyster beds, rocks, and shoals, in the waters of this State, shall not be leased, rented or sold, but shall be held in trust for the benefit of the people of this State, subject to such regulations and restrictions as the General Assembly may prescribe, but the General Assembly may, from time to time, define and determine such natural beds, rocks or shoals, by surveys or otherwise."

That in 1894, the General Assembly of Virginia (Acts 1893–94, c. 559) provided for a survey (known as Baylor survey) of all natural oyster beds, and by statute directed that all land within the survey was natural oyster land and all without was not natural oyster land. That, as to the former, no person, under penalty, could plant any oysters or oyster shells thereon, or, unless a licensed tonger, take any oysters therefrom; but, as to the latter a person desiring to lease the same for the purpose of planting and propagating oysters thereon might obtain a location or assignment by application to the state oyster inspector for the district in which he desired such location, and might thereafter and for the term of his lease plant, propagate, and gather oysters on the submerged land within the assignment. Code of Virginia 1924, §§ 3224, 3225. That the planters, several years prior to the filing of the bill, had obtained assignments or leases from the state to certain oyster bottoms in York river in Gloucester county, and that approximately 220 acres of the assignments included natural oyster rocks within the Baylor survey. That the inclusion of the natural rocks within the assignments or leases had been established by resurvey made under the direction of the commission of fisheries, and that thereafter the planters, alleging that they were innocent of any participation in the wrongful assignment applied to the commission, under authority of section 3233 of the Code of Virginia 1924, as amended by Acts 1926, c. 97, for the allowance to them of a period of two years to remove the oysters which they had planted on the natural rocks. That permission accordingly was granted them, as a result of which they are permitted, in violation of the common law and the constitutional rights of tongers, to occupy and use the natural oyster beds and to take the oysters therefrom and to exclude the tongers from enjoying similar rights and privileges. That the tongers, believing this exclusive right extended to the planters was unlawful, went upon the public rocks within the assignment for the purpose of taking oysters; whereupon planters filed a bill in the circuit court of Gloucester county for the purpose of enjoining them from the use

of the oyster beds in question. The circuit court refused a restraining order, and the case was appealed to the Supreme Court of Appeals of Virginia, which reversed the order of the circuit court and held section 3233 of the Virginia Code not violative of the Constitution of Virginia and within the authority of the General Assembly (Blake v. Marshall, 152 Va. ——, 148 S. E. 789, 793). The tongers now insist that, inasmuch as the rights now claimed by them under the Federal Constitution were not involved in the state court proceedings, that question is not foreclosed, and that they have a right to maintain this suit. Inasmuch as we have reached the conclusion that there is no merit in the case made in the bill, we pass by this question.

■ Section 3233 of the Code of Virginia 1924, as amended by Laws 1926, c. 97, provides as follows: "When, by any resurvey of oyster-planting grounds or survey made to re-establish the lines of the State survey of natural oyster beds, rocks or shoals which shall hereafter be made under the direction of the commission of fisheries, it shall appear that any holder, without his own default, and by mistake of any officer of the State, has had assigned to him and included in the plat of his assignment any portion of the natural oyster beds, rocks or shoals as defined by law, and it shall further appear that such holder has oysters or shells planted on the said ground, then, before the stakes shall be removed from said ground or the same opened to the public, the said holder shall be allowed two years, which may be increased by the commission of fisheries, in their discretion (and duly advertised), within which to remove his planted oysters or shells from the said ground, and any person other than the said holder, his agents or employees, going upon the said ground and taking oysters or shells therefrom before the expiration of the time allowed said holder, shall be deemed guilty of larceny thereof, and shall be punished as provided by this act for the larceny of oysters."

In construing this statute in Blake v. Marshall, supra, the Court of Appeals of Virginia, speaking through Chief Justice Prentis, said: "This statute is a regulation, designed to maintain the policies of the state, on the one hand to discharge the trust as to the natural rocks so as to recover them promptly for the public benefit if leased by mistake of the state's own official, and on the other hand to encourage the planting and propagation of oysters by assuring the lessee that, if innocent, he may recover his planted oysters which, but for the statute which changes the common law, would be forfeited. This regulation is a recognition of the moral considerations which support the claim of the planter and to correct a mistake for which the state is responsible. Surely no constitutional inhibition should be construed to deny to the people of the commonwealth the power to correct the mistakes of its own agents, to discharge its moral obligations, and to preserve private property rights, unless such an unethical construction is unavoidable. The oyster tonger has no property right in the natural oyster rocks, but only a privilege to take oysters from them, and this privilege is subject to regulation. The statute is one of many regulations authorized by the Constitution and made in the public interest."

If it be correct to say, as the Court of Appeals of Virginia does say, that the tonger has no property right in the natural oyster rocks, but only a privilege to take oysters from them subject to the regulatory power of the state, it would seem to us inevitably to follow that he is deprived of no property in the determination of the state to exclude him from the use of the rocks and from the taking of oysters therefrom for a limited period; and that he *has* no property right in the rocks or in the oysters growing on the rocks within the scope of the protection of the Fourteenth Amendment we think is clear.

In Martin v. Waddell, 16 Pet. at page 410, 10 L. Ed. 997, Chief Justice Taney, speaking for the court, said: "When the revolution took place, the people of each state became themselves sovereign; and in that character hold the absolute right to all their navigable waters, and the soils under them, for their own common use, subject only to the rights since surrendered by the constitution to the general government."

And in McCready v. Virginia, 94 U. S. 394, 24 L. Ed. 248, Mr. Chief Justice Waite speaking, said: "The principle has long been settled in this court, that each State owns the beds of all tide-waters within its jurisdiction, unless they have been granted away. * * * For this purpose the State represents its people, and the ownership is that of the people in their united sovereignty."

The decisions of the Supreme Court of Appeals of Virginia have uniformly asserted and upheld this proprietorship of the state in the navigable waters within the state and in the fish and oysters that inhabit them. See Taylor v. Commonwealth, 102 Va. 759,

47 S. E. 875, 102 Am. St. Rep. 865; Newport News v. Jones, 105 Va. 503, 54 S. E. 314, 6 L. R. A. (N. S.) 247. The decisions of the courts of other states are to the same effect. See State v. Tice, 69 Wash. 403, 125 P. 168, 41 L. R. A. (N. S.) 472, and cases cited. While it is quite true the citizens of a state have both a privilege and a property right in the oysters in the public waters of the state, it is neither a private right nor an individual right, but is wholly a right growing out of their sovereign capacity as citizens of the state, and is subject at all times to the control of the state and to such reasonable rules and regulations as may be made by the Legislature with relation thereto. In no case that we know of was it held that this so-called property right is a private right, or was free of the control and regulation of the state. As was said in Ex parte Maier, 103 Cal. 476, 37 P. 402, 404, 42 Am. St. Rep. 129: "The wild game within a state belongs to the people in their collective, sovereign capacity. It is not the subject of private ownership, except in so far as the people may elect to make it so; and they may, if they see fit, absolutely prohibit the taking of it, or any traffic or commerce in it, if deemed necessary for its protection or preservation, or the public good."

█ Nor are we impressed with the argument on behalf of the tongers that "the privileges or immunities" intended to be protected by the Fourteenth Amendment are identical with those claimed here in their behalf. Such privileges and immunities as the tongers have in this case are in virtue of their residence and citizenship in Virginia, and these, as was decided by the Supreme Court in the Slaughter House Cases, 16 Wall. 36, 77, 21 L. Ed. 394, are within the constitutional and legislative power of the states and without that of the federal government. The Fourteenth Amendment to the Constitution was not intended to bring within its scope those rights recognized as belonging exclusively to the states—rights which all citizens hold in common by virtue of their being citizens—but rather to leave them to the state governments for their security and protection.

█ Nor are we any more impressed with the argument that the Virginia statute in question denies to the tongers "due process" or "the equal protection" of the law. These terms as used in the amendment have been construed time and again by the Supreme Court, and the principle universally announced is that the object of the language used in the amendment was primarily to prevent arbitrary action and to secure "those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions." As was said by Mr. Justice Matthews in Hurtado v. California, 110 U. S. 516, 4 S. Ct. 111, 121, 28 L. Ed. 232: "Any legal proceeding enforced by public authority, whether sanctioned by age and custom, or newly devised in the discretion of the legislative power in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law."

Section 3233 of the Code of Virginia 1924, which empowers the commission of fisheries to exclude the licensed tonger of the state from the use of the natural oyster rock for a limited period of time to enable a planter who, without default on his part and through the mistake of an officer of the state, has been led to place his private property on the public rocks, is not a denial of due process or the equal protection of the law, and is therefore not in conflict with those provisions of the Fourteenth Amendment of the Constitution of the United States. The statute is not class legislation, for it affects all alike. It neither favors one class nor discriminates against another. It applies to all who are within its terms. The unfortunate citizen, whoever he may be and of whatever class, who has innocently gone upon the public oyster rocks of the state pursuant to the permission of the state, though mistakenly granted, is allowed time in which to reclaim his property. It is, as the Supreme Court of Virginia says, a regulation in the development of the policy of the state in the encouragement and promotion of the planting of oysters. It has been the law in Virginia since before the adoption of the Constitution of 1902 in which for the first time section 175 as it is appears. The privilege which it grants the planter is clear and unmistakable. It gives him the right to reclaim the oysters which he had, without fault on his part, placed on the natural rock. He has no right to take anything else than his own property. If in taking his own property he takes also that which does not belong to him, he is subject to criminal prosecution under the law, and it is of course the duty of the state to be watchful and careful that the permission be not abused. "Due process of law" inhibits the taking of one man's property and giving it to another contrary to the usual and settled modes of procedure. Ochoa v. Hernandez y Morales, 230 U. S. 139, 33 S. Ct. 1033, 57 L. Ed. 1427. There is nothing in the statute to bring it within this definition.

For these reasons the motion to dismiss

should be granted, and the motion for an interlocutory and permanent injunction denied.