**J. H. MILES & CO., Inc., v. McLEAN CONTRACTING CO. et al.**

No. 6008.

United States Court of Appeals Fourth Circuit.

Argued Jan. 6, 1950.

Decided March 10, 1950.

Roy L. Sykes and R. Arthur Jett, Norfolk, Va., for appellant. Harry H. Holt, Jr., Hampton, Va. (George R. Humrickhouse, United States Attorney, Richmond, Va., John P. Harper, Assistant United States Attorney, and John W. Oast, Jr., Norfolk, Va., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

790

DOBIE, Circuit Judge.

J. H. Miles and Company, Incorporated (a Virginia corporation hereinafter called Miles), instituted a civil action in tort against McLean Contracting Company, a Delaware corporation, and American Dredging Company, a Pennsylvania corporation, in the Circuit Court of the City of Norfolk, Virginia, which was removed by the defendants to the United States District Court for the Eastern District of Virginia. The District Court dismissed this action without a trial on the merits and Miles has duly appealed to us.

We are here concerned with some 18.7 acres of oyster grounds (and the oysters and clams thereon) near Craney Island in the State of Virginia. The rights of Miles here involved were acquired by Miles from J. C. Thorns by two separate assignments by Thorns to Miles. One assignment involved 7.7 acres, the other assignment involved 11 acres.

The rights in the 7.7 acres of oyster planting grounds were first acquired by J. C. Thorns by assignment from the State of Virginia and approved by M. C. Eaton, Oyster Inspector, District 21, Norfolk County, Virginia, on July 1, 1936. The assignment was duly recorded in the Clerk's Office of the Circuit Court of Norfolk County, Virginia, on July 1, 1936, in Book No. 1 at page 24, and bears file No. 4083 in the office of the Commission of Fisheries. This 7.7 acres was first surveyed on May 18, 1936, and a plat of this survey was filed in the office of the Commission of Fisheries along with the assignment of said oyster planting ground to J. C. Thorns.

On June 3, 1940, J.C. Thorns transferred to Miles this 7.7 acres of oyster planting grounds, which transfer was approved by A. E. Ewell, Oyster Inspector, District 21, Norfolk County, under date of August 30, 1940, and is duly of record in the Office of the Commission of Fisheries, Newport News, Virginia.

A. E. Ewell, Oyster Inspector, District 21, Norfolk County, filed the transfer from J. C. Thorns to Miles in the office of the Commission of Fisheries on September 11, 1944. The records of the office of the

Commission of Fisheries, Newport News, Virginia, disclose that the ground rents were paid on the 7.7 acres by Miles on October 27, 1944, for the period 1940–1944.

The other 11 acres were a part of the 30.7 acres assigned to W. W. Forrest and A. L. Forrest on July 5, 1929, by the State of Virginia and approved by W. H. Gary, Oyster Inspector, District 21, Norfolk County, Virginia. The said assignment is duly of record in the office of the Commission of Fisheries, Newport News, Virginia, and bears file No. 1755.

These 30.7 acres were first surveyed on July 5, 1929, by R. R. Savage, Norfolk County Surveyor, and a plat of said survey was filed in the office of the Commission of Fisheries along with the assignment of said oyster planting grounds to W. W. Forrest and A. L. Forrest. The plat indicates that the 30.7 acres of oyster planting grounds lie outside the public ground.

The 11 acres were on March 26, 1936, transferred from W. W. Forrest and A. L. Forrest to J. C. Thorns. This transfer was approved by M. C. Eaton, Oyster Inspector, District 21, Norfolk County, Virginia, on March 26, 1936, and is duly of record in the office of the Commission of Fisheries, Newport News, Virginia.

On June 3, 1940, J. C. Thorns transferred to Miles this 11 acres of oyster planting ground, which said transfer was approved by A. E. Ewell, Oyster Inspector, District 21, Norfolk County, Virginia, under date of August 30, 1940, and is duly of record in the office of the Commission of Fisheries, Newport News, Virginia.

A. E. Ewell, Oyster Inspector, District 21, Norfolk County, Virginia, filed the transfer from J. C. Thorns to Miles in the office of the Commission of Fisheries on September 11, 1944. The records of the office of the Commission of Fisheries, Newport News, Virginia, disclose that the ground rents were paid on the 11 acres by Miles on October 27, 1944, for the period 1940–1944.

Miles, immediately upon the transfer of these oyster planting grounds from J. C. Thorns, staked the same by placing buoys on the corners and stakes on the lines.

These stakes were renewed and replaced from time to time from the date of purchase until the date of injury. Clams and oysters were planted on said grounds beginning in the Fall of 1940. Miles visited the grounds and inspected the oysters and clams planted thereon on an average of once every month or two from the Fall of 1940 until the Fall of 1943.

Miles, in its complaint, alleged that in the Autumn of 1943, it discovered that the negligent dredging operations conducted by the defendants had deposited large quantities of silt and mud on the oysters and clams in these 18.7 acres, completely destroying the oysters and clams thereon. This civil action was filed to recover damages for the financial injuries thus sustained by Miles.

The District Court held that the 18.7 acres of oyster grounds (with which we are here concerned) lay all within the natural oyster beds, rocks and shoals in the waters of the State of Virginia, as determined by the Baylor Survey, and then stated: "Because we find the assigned area to be located, and the oysters and clams to be planted, within the natural grounds, we necessarily conclude, for the reasons already set forth, that the plaintiff has no cause of action—he was beneficiary of neither the grounds, nor the oysters, nor the clams at the time of the alleged injury to them—and the complaint must be dismissed."

■ We must sustain the holding of the District Court that these oyster grounds lay within the Baylor Survey and were thus part of the natural oyster beds, rocks and shoals in the waters of the State of Virginia. No useful purpose would be served by any detailed review of the evidence of the engineers who testified below on this point.

Section 175 of the Constitution of Virginia provides: "The natural oyster beds, rocks and shoals, in the waters of this State shall not be leased, rented or sold, but shall be held in trust for the benefit of the people of this State, subject to such regulations and restrictions as the general assembly may prescribe, but the general assembly may, from time to time, define and determine such natural beds, rocks or shoals by surveys or otherwise."

We quote § 28-113, Chapter 5, Va.Code of 1950: "When, by any re-survey of oyster-planting ground or survey made to re-establish the lines of the State survey of natural oyster beds, rocks, or shoals, which shall hereafter be made under the direction of the Commission of Fisheries, it shall appear that any holder, without his own default, and by mistake of any officer of the State has had assigned to him and included in the plat of his assignment any portion of the natural oyster beds, rocks, or shoals, as defined by law, and such holder, shall file a petition with the Commission for leave to remove such oysters or shells from said ground, and the Commission after hearing evidence shall be of the opinion that the holder has oysters or shells planted on such ground, and that without default of the holder and by mistake of an officer of the state there has been assigned to him and included in the plat of his assignment a portion of the natural oyster beds, rocks, or shoals, as defined by law, then the Commission may allow the holder a reasonable time, not exceeding two years, within which to remove such oysters, their increase, and the shells therefrom."

Section 28-114, Chapter 5, Va.Code of 1950, reads: "Any person, other than such holder, his agent or employees going upon such ground and taking oysters and shells therefrom before the expiration of the time allowed such holder, shall be deemed guilty of larceny thereof, and shall be punished as provided by this chapter for the larceny of oysters."

Section 28-115, Chapter 5, Code of 1950, provides for a public hearing, upon the filing of such a petition, before the Commission of Fisheries; while § 28-116, Chapter 5, Va.Code of 1950, gives an appeal from the decision of the Commission to the circuit court of the county wherein the oyster lands lie on behalf of any party aggrieved by the decision of the Commission. Miles did not file any application, under Va.Code 1950, § 28-113 above, for permission to remove the oysters he had planted.

Interpreting Va.Code 1950, § 28-114 (set out above) Chief Justice Prentis, speaking for the Supreme Court of Appeals of Virginia in Blake v. Marshall, 152 Va. 616, 631-632, 148 S.E. 789, 793, said: "This statute is a regulation, designed to maintain the policies of the state, on the one hand to discharge the trust as to the natural rocks so as to recover them promptly for the public benefit if leased by mistake of the state's own official, and on the other hand to encourage the planting and propagation of oysters by assuring the lessee that, if innocent, he may recover his planted oysters which, but for the statute which changes the common law, would be forfeited. This regulation is a recognition of the moral considerations which support the claim of the planter and to correct a mistake for which the state is responsible. Surely no constitutional inhibition should be construed to deny to the people of the commonwealth the power to correct the mistakes of its own agents, to discharge its moral obligations, and to preserve private property rights, unless such an unethical construction is unavoidable. *The oyster tonger has no property right in the natural oyster rocks, but only a privilege to take oysters from them,* and this privilege is subject to regulation." (Italics ours.)

And Circuit Judge Woods, speaking for our Court on this same statute in Hurley v. Commission of Fisheries of Virginia, D. C., 264 F. 116, 120, affirmed 257 U.S. 223, 42 S.Ct. 83, 66 L.Ed. 206, stated: "When the complainant planted oysters on the natural oyster land, they became the property of the state under the common law. To relieve from possible hardship, the state by the statute last quoted conferred the right of a holder to remove the oysters on conditions set out in the statute. The statute does not take away any property, or injure any property right; on the contrary, it confers rights on the conditions set out."

See, also, Commission of Fisheries v. Hampton Roads Oysters Packers and Planters Ass'n, 109 Va. 565, 64 S.E. 1041; Gloucester Seafood Workers Ass'n v. Houston, Commissioner of Fisheries of Virginia, D. C., 35 F.2d 193.

This statute, as a remedial one, should be interpreted liberally. It is at least a fair assumption that the Commission will, upon a showing of the required statutory conditions by the holder, grant him the right to remove the oysters he has planted. And § 28-114 of the Virginia Code of 1950 makes it larceny for anyone other than the holder, his agent or employees, to go upon the ground and remove the oysters and shells thereupon. Though this last statute is criminal, for a violation of which only the State of Virginia can prosecute, it yet serves as a protection to the holder of the oyster beds against the depredations of outsiders. And no criminal sanctions seem to be provided if the holder removes the oysters without having first obtained the requisite permission.

In the light of what has been above written, we think that Miles here had some *interest* in the oysters he had planted and that this interest gives him sufficient standing to sue in the courts a trespasser who has negligently injured these oysters. Certainly as against outsiders (apart from the rights of the State of Virginia) Miles, by fixing its stakes, placing its buoys and planting the oysters, was exercising a measure of definite control over the oyster grounds and the oysters which amounted at least to quasi possession. Miles had under a claim of right, based on an assigned lease approved by the State Oyster Inspector, planted and harvested oysters in previous years without objection by the State of Virginia or outsiders and it could reasonably expect no interference with its activities in the future. We think we are not called upon either to define specifically or to fit into a precise legal category the exact nature and extent of Miles' interest.

The Supreme Court of Virginia seems never to have passed definitely on the question now before us. Our attention, however, has been called to the case of R. L. Miles, plaintiff, v. Standard Dredging Company, a corporation, et als., defendants, and the companion case of J. C. Thorns v. Standard Dredging Company, a corporation, et als., heard by the Circuit Court of the City of Norfolk on July 24, 1931. Therein, plaintiffs instituted actions to re-

cover for damages to oysters and oyster planting grounds due to defendants' negligence in performing a contract of dredging for the improvement of Norfolk Harbor. Plaintiffs were the lessees of oyster planting grounds in and near Tanner's Creek, Hampton Roads, Virginia. The defendant in the Miles case contended, among other things, that the grounds in question were located within the natural beds, rocks and shoals of the State of Virginia and that the oysters planted thereon were not plaintiff's property since he had no right to move them and consequently the oysters were of no value to the plaintiff. The plaintiff in the Miles case was allowed an appropriate instruction for the recovery of its damages to the oysters planted on leased grounds. The jury returned a verdict in favor of the plaintiff Miles for $22,-350. The defendants filed their petition for writ of error and supersedeas in the Supreme Court of Appeals of Virginia.

The defendants in support of their position cited numerous cases, including Commissioner v. Hampton Roads Oyster Company, 109 Va. 565, 586, 64 S.E. 1041; Richardson v. United States, C.C. 100 F. 714; Blake v. Marshall, 152 Va. 616, 148 S.E. 789, and Hurley v. Commission of Fisheries, D.C., 264 F. 116. The Supreme Court of Appeals of Virginia on November 12, 1931, after having seen, inspected and maturely considered the transcript of the record of the judgment, the petition of defendants for a writ of error and supersedeas, and the reply of plaintiffs thereto, rejected said petition, the effect of which was to affirm the judgment and action of the Circuit Court of the City of Norfolk.

Though we are not bound to follow the decisions of trial courts of a state, these cases, coupled with the refusal of the Virginia Supreme Court of Appeals to grant a writ of error, have some persuasive influence. And this is true though the influence of those two cases is somewhat weakened by the fact that the precise question before us seems not to have been voiced in the Thorns case; while, in the Miles case, the evidence was somewhat indefinite and was far from conclusive on the question whether the oyster beds of plaintiff were within the Baylor Survey.

The cases are legion which hold that possession, control or a slight measure of interest under a claim of right will permit suit against a trespasser. Thus, in Shrewsbury v. Smith, 14 Pick. 297, 302, the Supreme Judicial Court of Massachusetts stated: "There are many cases, where acts have been done intended to constitute a good or valid title, where grants have been made and titles transferred, but where, through negligence, ignorance or mistake, especially where corporations, public bodies and official agents are concerned, such titles cannot be legally proved. * * * But if such owner upon consideration of propriety, equity and conscience choose to acquiesce, or permit the party in possession to retain that possession, notwithstanding any defect of title, by what rule of law, of equity or sound policy, can a mere stranger be allowed to interfere and by his own act violate the actual and peaceable possession of another, and thereby compel him to disclose a title, in the validity or invalidity of which such stranger has no interest?" And, see, 63 Corp.Jur. 910; 52 Am.Jur. 855.

Strikingly similar to the case before us are the cases all involving injuries to oysters and oyster beds, of Palmer v. Hartford Dredging Co., 73 Conn. 182, 47 A. 125; Payne & Butler v. Providence Gas. Co., 31 R.I. 295, 77 A. 145, Ann.Cas.1912B, 65; Boston, Cape Cod & New York Ship Canal Co. v. Henshaw, 229 Mass. 185, 118 N.E. 276, 278. In this last case, it was said: "Even if we assume in favor of the respondent that the petitioners' acts were contrary to the statute, the licenses granted to them cannot be forfeited at the request of a stranger to the grant, in a collateral proceeding. And it cannot be successfully contended in such a case that the licenses have been forfeited. *The privilege of carrying on the business of growing oysters was granted to the petitioners under an act of the Legislature, and until the objection is made by the grantor and the forfeiture insisted on by the commonwealth, the respondent cannot rely on the alleged viola-*

*tion of the statute as an excuse for refusing compensation for the property injured."* (Italics ours.) See, also, Gulf, C. & S. F. Railway Co. v. Johnson, 8 Cir., 54 F. 474; Northern Pacific Railway Co. v. Lewis, 9 Cir., 51 F. 658; Reed v. Price, 30 Mo. 442.

We think our decision here finds some support in the well settled rule that a private individual may sue on a public nuisance when he can show that he has, by virtue of this nuisance, sustained damage to him of a special character, distinct and different from the injury suffered by the public generally. See, 39 Am.Jur. § 124, pages 378 et seq., and the host of cases there cited, particularly Northern Pacific Railroad Co. v. Whalen, 149 U.S. 157, 13 S.Ct. 822, 37 L.Ed. 686; Northern Transportation Co. v. City of Chicago, 99 U.S. 635, 25 L.Ed. 336; Sullivan v. American Manufacturing Co., 4 Cir., 33 F.2d 690; Henry v. City of Newburyport, 149 Mass. 582, 22 N.E. 75, 5 L.R.A. 179; Rhymer v. Fretz, 206 Pa. 230, 55 A. 959, 98 Am.St. Rep. 777; Meredith v. Triple Island Gunning Club, 113 Va. 80, 73 S.E. 721, 38 L.R.A.,N.S., 286, Ann.Cas.1913E, 531; Beveridge v. Lacey, 24 Va. 63. Certainly Miles has here sustained such special and distinct damage, apart from the injury suffered by the public.

Interesting in this connection is the well known Hampton case. The opinion of Judge Meekins, with an elaborate history of the gentle art of fishing, attracted no little attention. Hampton v. North Carolina Pulp Co., D.C., 49 F.Supp. 625. We reversed the District Court, Hampton v. North Carolina Pulp Co., 4 Cir., 139 F.2d 840, on the strength of Hampton v. North Carolina Pulp Co., 223 N.C. 535, 27 S.E.2d 538, in which the Supreme Court of North Carolina unanimously held that a riparian proprietor on a navigable river could maintain a civil action to recover damages for interference with his fishing rights due to the pollution of the waters of the river by the discharge of toxic chemicals by defendant, which arrested the migration of fish or diverted to other waters the normal run of the fish past the plaintiff's riparian property. Said Associate Justice Sewell, 27 S.E.2d at page 546: "Plaintiff does not claim any property right in the fish in their wild state; he does claim the right to have the migration continued uninterruptedly to his nets, without the wrongful interference of the defendant."

We hold, then, that Miles had at least an interest in the oysters he had planted, which Miles alleged had been damaged by a trespasser through negligence; that this interest is of sufficient worth, dignity and stature to permit Miles to sue the defendants here for this alleged damage. The judgment of the District Court is, accordingly, reversed and the case is remanded to that court for a new trial. At the new trial, all proper issues can be adequately determined.

Reversed and remanded.

SOPER, Circuit Judge (dissenting).

It is not surprising, in view of the law of Virginia, that the claim of the plaintiff to recover damages in this case finds no support in any precise legal category with which the court is familiar. The truth is that the provisions of the Constitution and statutes of Virginia and the decisions of the Supreme Court of Appeals of the State and of this court, relevant to the point in issue, are so clear as to leave little doubt that the plaintiff's right is non-existent.

The plaintiff has a recorded claim to two tracts of submerged natural oyster grounds under the waters of Hampton Roads, Virginia, to which no person may acquire title or right of possession under the laws of the State. The acreage was assigned by mistake by a state officer to the plaintiff's predecessor in two assignments in 1929 and 1936 respectively; but whether the mistake was attributable to the state officer without fault of the assignee, we do not know as there is no evidence on the point. The Constitution of Virginia, Section 175, provides that the natural oyster beds in the waters of the State shall not be leased, rented or sold, but shall be held in trust for the benefit of the people of the State, and the statute law prohibits the occupancy and planting of oysters in natural oyster beds and requires the removal of all stakes and other obstructions from such beds. The resulting situation was summarized by this

court in Hurley v. Commission of Fisheries of Virginia, D.C., 264 F. 116, 118, in the following words: " * * * The rule of the common law is well settled that one who in good faith plants oysters on submerged land which is not natural oyster land—on which oysters do not grow naturally—has the ownership of them, and may remove them, although he has not leased the land from the state; but it is equally well settled that one who plants oysters on natural oyster lands, and thus mingles them with the oysters growing naturally, is conclusively held to have abandoned them to the public." This decision was quoted from at length and approved in Blake v. Marshall, 152 Va. 616, 148 S.E. 789. See also Commission of Fisheries v. Hampton Roads Oyster Co., 109 Va. 565, 64 S.E. 1041.

In conformity with the Virginia Constitution and statutes a survey of the natural oyster lands of the State has been made, and in this case it has been found that the oyster beds claimed by the plaintiff are within the prohibited territory. How then can the plaintiff recover in this suit the value of the oysters which under the Virginia law it abandoned when it planted them in the public grounds? First it is said that the recovery should be allowed because the statutes provide, Virginia Code of 1950, Section 28-113, that if by the mistake of an officer of the State any person has been assigned a portion of the natural oyster beds without fault on his part, and has planted oysters in the ground, and shall file a petition with the Commission of Fisheries for leave to remove the oysters and the Commission, after hearing the evidence, shall find that the assignee has planted oysters and that the assignment was made through the mistake of the officer, and without default on the part of the assignee, then the Commission may allow the assignee a reasonable time not exceeding two years to remove the oysters. It is admitted that the plaintiff has not complied with this statute; but the court assumes that the Commission *will* grant the petitioner the right to remove the oysters upon a showing of the required statutory conditions. This argument is ob-

viously untenable. The plaintiff has not shown in this case that the assignment to his predecessor was granted through mistake of a state official and without fault on the predecessor's part. But even if this point had been proved, this court has no power to arrogate to itself the authority to decide a question which is conferred by statute upon the State Commission of Fisheries. The controlling factor is that the plaintiff has no title and no possession because it abandoned the oysters when it planted them on the natural grounds and has not complied with the conditions upon which alone its right to retake them depends.

There is nothing in the decision of this court in Hurley v. Commission of Fisheries of Virginia, supra, to the contrary. Judge Woods in his opinion quoted the constitutional and statutory provisions above noted and then pointed out that to relieve from possible hardship the statutes confer the right of a holder to remove the oysters *on conditions set out in the statute*. He added that the statute does not take away any property or injure any property right but on the contrary confers right *on the conditions set out*. The last statement was made because the plaintiff in that case was endeavoring to show that he had been deprived of his property without due process of law. It was not made to indicate that the statute confers any rights whatsoever unless its conditions are complied with. The possibility or even probability that the plaintiff might have obtained a favorable decision from the Commission of Fisheries, if it had applied to it and offered the requisite proof, is of course not enough to support the plaintiff's case. This court is without power to pass upon the question.

Secondly, it is said that although the Supreme Court of Appeals of Virginia has never definitely passed on the question before us, it may be inferred that it would regard the plaintiff's case favorably by reason of its refusal to grant petitions for writ of error in Miles v. Standard Dredging Co. and Thorns v. Standard Dredging Co., decided in favor of the plaintiffs in the Circuit Court of the City of Norfolk on July 24, 1931. It is said that these cases in-

volve the same point as the pending case and were decided in favor of the plaintiff. An examination of the record does not sustain this statement. The point was not raised in the Thorns case since there was no showing that the oysters were planted in public grounds. The point was raised in the Miles case but it was not decided. The defendant in that case tried to show that the plaintiff's oysters were planted on public grounds and hence he was not entitled to damages for their loss since he had not applied to the State Commission and received leave to remove them; but the evidence was that the grounds had not been surveyed and the witness could only testify that he thought the grounds were to some extent within the Baylor Survey, but how much he could not say.

The cases from other states involving the rights of persons to sue for damages to oyster properties which were not acquired in strict accordance with state law are not pertinent here. The natural oyster beds of Virginia belong to the people of the state and one who plants oysters in them abandons them and has neither title nor possession.